**In re MADISON COUNTY ECONOMIC OPPORTUNITY COMMISSION, Debtor.**

**ILLINOIS DEPARTMENT OF TRANSPORTATION, for the Use of the PEOPLE OF THE STATE OF ILLINOIS, Plaintiff,**

v.

**MADISON COUNTY ECONOMIC OPPORTUNITY COMMISSION, and Steven N. Mottaz, Trustee, Defendants.**

**Bankruptcy No. BK 84–50121.**
**Adv. No. 84–0171.**

United States Bankruptcy Court, S.D. Illinois.

June 24, 1985.

Neil Hartigan, Atty. Gen. for the State of Illinois, Springfield, Ill., for plaintiff.

James S. Reeves, Alton, Ill., for debtor.

Steven N. Mottaz, Alton, Ill., Trustee.

## ORDER

J.D. TRABUE, Bankruptcy Judge.

At East St. Louis, in said district, this matter having come before the Court pursuant to a complaint filed on behalf of the Illinois Department of Transportation, by its attorney, Neil F. Hartigan, Attorney General of the State of Illinois; and an answer thereto, as well as a counterclaim, filed by Steven N. Mottaz, Trustee for the debtor herein; and a reply to the counterclaim filed on behalf of the plaintiff herein by its attorney, Neil F. Hartigan; the Court, after reviewing the pleadings and briefs submitted by the parties, finds good cause to enter the following findings of fact and conclusions of law:

1. Madison County Economic Opportunity Commission filed its Chapter 7 petition under the Bankruptcy Code on March 27, 1984.

2. Madison County Economic Opportunity Commission (hereinafter "MCEOC") is a not-for-profit corporation.

3. On or about December 21, 1977, the Illinois Department of Transportation (hereinafter "IDOT") in conjunction with the Urban Mass Transportation Administration of the United States Department of Transportation (hereinafter "UMTA"), entered into a capital grant agreement with MCEOC.

4. Said agreement was a grant which was to enable MCEOC to purchase two vans to provide transportation for the elderly and handicapped in the Madison County area.

5. The grant agreement provided in Item 114 "Title to Project Equipment" that:

"Title to Project Equipment shall be in the Grantee subject to the restrictions on the use and disposition of the Project equipment set forth herein. The following notification shall be placed on the Title document of each vehicle.

"This vehicle was purchased in part with Federal funds through the Illinois Department of Transportation, Urban Mass Transportation Administration, and with state funds through the Illinois Department of Transportation."

6. Said notification was never placed on the titles of the vans in question.

7. The Illinois Association of Community Action Agencies (hereinafter "IACAA") was authorized by IDOT to secure the two vehicles on March 12 and 14, 1984, two weeks before MCEOC filed for bankruptcy and they are now in the possession of IDOT.

8. The titles to the two vans are in the possession of the Attorney General of the State of Illinois.

A jurisdictional question has been raised by the plaintiff that must first be addressed before deciding whether the two vans in question are property of the bankrupt's estate. The Court finds that it has subject matter jurisdiction over this matter pursuant to 11 U.S.C. § 106, as well as 28 U.S.C. § 157.

11 U.S.C. § 106(a) provides:

"A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose."

 The plaintiff in this case has filed a proof of claim against the estate. The bankruptcy provision was thus promulgated by Congress out of a desire to prohibit a governmental unit from receiving distribution from the estate without sub-

jecting itself to any liability it has to the estate within the confines of a compulsory counterclaim rule. *State of West Virginia, Department of Finance and Administration v. P. Hassett (In re OPM Leasing Services, Inc.*), 23 B.R. 104 (Bankr.S.D.N.Y.1982).

 The Court finds that the matter concerning ownership of the two vans in question is a core proceeding pursuant to 28 U.S.C. § 157, as well as a matter arising in a case under Title 11. The Court also finds that the plaintiff has waived its sovereign immunity right by filing its proof of claim. Therefore, the issue of ownership will now be discussed.

The Trustee alleges that 11 U.S.C. § 545 permits the Trustee to avoid the fixing of a statutory lien on property of the debtor. 11 U.S.C. § 545 states as follows:

"The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—...

(2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists ..."

Since perfection of the title by either UMTA or IDOT in the vehicles did not occur, the Trustee argues that he may avoid any alleged liens pursuant to 11 U.S.C. § 545.

Plaintiff alleges that perfection of liens is not necessary for proof of equitable liens and also asserts that the Trustee should be estopped from claiming that the required lien language does not appear on the vehicle titles since MCEOC was obligated by the grant agreement to type the liens language on the titles.

The perfection of a security interest is governed by *Ill.Rev.Stat.* ch. 95½, § 3–202 (1985) which states as follows:

"Perfection of security interest.

(a) Unless excepted by Section 3–201 a security interest in a vehicle of a type for which a certificate of title is required is not valid against subsequent transferees or lienholders of the vehicle unless perfected as provided in this act.

(b) A security interest is perfected by the delivery to the Secretary of State of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the required fee. it is perfected as of the time of its creation if the delivery is completed within twenty-one days thereafter, otherwise as of the time of delivery ..."

The Trustee cites *In Mottaz v. Keidel (In the matter of Keidel*), 613 F.2d 172 (7th Cir.1980) for his position that a statutory lien is not enforceable unless perfected by the law of the state. In the *Keidel* case, a security interest was not perfected within twenty-one days of its creation. It was not perfected until application was delivered to said Secretary of State well after the date of bankruptcy. The court held that this security interest was subordinate to those of the Trustee in bankruptcy who stood in the position of a lien creditor or lienholder. The court also stated that Illinois has a strong policy favoring dilligence in perfection.

A case which is distinguished from the *Keidel* case is *In the matter of C. Robinson*, 665 F.2d 166 (7th Cir.1981). In *Robinson*, a debtor transferred ownership in a certain truck before the filing of bankruptcy without filing a statutory provision. The Trustee in *Robinson* argued that since the certificate of title indicated that the debtor owned the motor vehicle and the parties neglected to follow the Illinois statute, the truck should be property of the debtor's estate. The Seventh Circuit ruled that between the immediate parties a transfer was valid even though the statute had not been complied with. Applying rules of statutory construction, the appellate court held that the Trustee in bankruptcy was not in the zone of interest of those parties that could benefit from a transferor's or transferee's failure to follow *Ill.Rev.Stat.* ch. 95½, § 3–112 (1985) of the Motor Vehicle Code.

■ In the instant case, the Court feels that the ruling in *Keidel* should be followed. The plaintiff should have checked the certificate of title to the vans in question regardless of the grant agreement. The Illinois law applicable to secured transactions including motor vehicles, places strong emphasis on the need for diligence in perfection of the security interest in accordance with the statutory method. *See, Ill.Rev.Stat.* ch. 95½, § 3–202 (1985). Plaintiff also argues that an equitable lien was created. The Trustee argues that since the funds were spent for the purpose for which they were appropriated, to finance the acquisition of equipment for use in mass transportation, 49 U.S.C. § 1602(a)(1)(B) (1978), there was no longer an equitable lien to the property. The Trustee cites *Palmiter v. Action, Inc.*, 733 F.2d 1244 (7th Cir.1984). In *Palmiter*, the plaintiff sought to garnish bank accounts of Action, Inc., an Indiana non profit community service organization, to satisfy personal injury judgment. All the funds in Action's bank accounts were federal funds. Plaintiff insisted that despite their original origins the funds are now Action's property because Action received them from Indiana pursuant to reimbursement contracts. Plaintiff also claimed that the United States cannot maintain an equitable lien on these funds because it has failed to meet the burden imposed on the holder of such lien to identify the specific dollars in the comingled accounts which were received by Action under direct grant programs. The funds were conditioned on the use for specific statutorily mandated purposes. The court held that even where the organization disbursing federal grant funds is not a governmental agency, the funds are immune to the extent they have not yet been spent for their federally authorized purpose.

In *Henry v. First National Bank of Clarksdale*, 595 F.2d 291–308, 309 (5th Cir. 1979), *cert. denied* sub. nom., *Clairborne Hardware Company v. Henry*, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756, the court stated that since virtually all of Mississippi Action for Progress assets were derived from grants made through the Department of Health, Education & Welfare under the Headstart Follow-Through Act— 42 U.S.C. § 2928 (1976), and predecessor statutes authorizing funding for qualified Headstart programs and the act carefully delineated the purposes for which grant funds may be expended the United States retained a reversionary interest in all grant funds and in all property purchased with such funds that can no longer be used for the narrow purposes specified in the act and regulations.

■ The present case at hand is similar to the *Henry* case. The funds that were given to MCEOC by the plaintiff were to be used for specific purposes as noted in the grant agreement. Item 105 of the agreement states:

"If during such period Project facilities are not used in accordance with the application or service plan, as the case may be, the Grantee shall immediately so notify the Department. Upon learning of the misuse of Project facilities from the Grantee or in any other manner, the Department, subject to approval of UMTA, may require the Grantee to . . ."

Item 106 of the agreement states that MCEOC must file monthly and annual reports on the maintenance and condition of the vans. By Items 108 and 109(c) MCEOC has a limit spending in accordance with a budget. By Item 109(a) MCEOC had to segregate project funds from its other assets thereby prohibiting commingling. By Item 109(f) MCEOC agreed to permit audits by IDOT. By Item 113 MCEOC agreed to not let other parties use the vans without IDOT's permission.

This Court finds that the continuing interest and tight control that the plaintiff retained in the grant funds meets the criteria for creation of an equitable lien. *See, Henry, supra.*

Since this Court finds that an equitable lien was created concerning the vans in question, it will not discuss the alleged constructive trust or resulting trust argued by plaintiff.

WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the plaintiff has an equitable lien in the vehicles in question to the extent that the plaintiff can prove the amount of funds used in purchasing said vans.