**In re JOLIET–WILL COUNTY COMMUNITY ACTION AGENCY, Debtor.**

**Bankruptcy No. 84 B 13298.**

United States Bankruptcy Court, N.D. Illinois, E.D.

April 3, 1986.

Debbie Ebner, Cooper & Cooper, Ltd., Chicago, Ill., Trustee.

Joel R. Nathan, Sp. Ass't. Atty. Gen., Revenue Litigation Div., Chicago, Ill., for State of Ill.

### MEMORANDUM AND ORDER

ROBERT L. EISEN, Chief Judge.

This matter comes to be heard on the motion of the trustee to sell certain purported assets of the estate pursuant to 11 U.S.C. § 363, to pay administrative expenses pursuant to 11 U.S.C. § 506(c), and for allowance of interim compensation and reimbursement of expenses pursuant to 11 U.S.C. § 330. Subsequent to the applications of the trustee, all of which were objected to by the State of Illinois, Department of Commerce and Community Affairs ("DCCA"), a joint motion was presented by

DCCA, the Illinois Department of Public Health, the Illinois State Board of Education, and Action, Inc. (hereinafter collectively referred to as the "Grantor Agencies") to compel the trustee pursuant to 11 U.S.C. § 554 to abandon the subject property as burdensome and of no benefit to the estate. The resolution of the present motions, which the parties have submitted with supporting memoranda for ruling by the court, require the court to determine what interest the estate has in the grant funds and grant property held by the debtor at the time of filing its petition for relief.[1] For the reasons set forth below, the court denies the motion of the Grantor Agencies to compel abandonment.

## BACKGROUND

The Joliet-Will County Community Action Agency ("debtor") was a non-profit community service organization created to alleviate poverty in the Joliet-Will County area. In furtherance thereof, the debtor was funded exclusively by various granting agencies.[2] The grant funds distributed were to be used solely in accordance with the respective grant agreements entered into by the debtor prepetition. In addition, the debtor expended some of the grant funds to purchase certain grant property.

On October 22, 1984, the debtor filed its voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On that date, the debtor had certain funds on deposit with various financial institutions. The trustee has secured possession over these funds and deposited them into two accounts at the Albany Bank & Trust Co., N.A., for the benefit of the estate.[3] These funds were transferred by the Grantor Agencies pursuant to the grant agreements.[4] All other property described in the debtor's schedules and/or in the trustee's possession, with the exception of a limited number of items,[5] is grant property. The debtor did not complete any of the project purposes described in the grant documents.

Prior to filing its petition and at the time it terminated operations, the debtor voluntarily surrendered certain grant property identified as weatherization material, which was purchased with grant funds supplied by DCCA, to DCCA for the limited purpose of protecting it. The trustee now contends that the weatherization material, the proceeds from a sale of vehicles title to which was in the debtor's name, and the aforementioned funds on deposit are among the assets of the estate. The Grantor Agencies have timely filed proofs of claim in this proceeding, the aggregate value of which claims exceed the aggregate value of the grant property and grant funds. These entities all claim equitable liens in the

---

1. The Grantor Agencies have stated that the purpose of the joint motion is not to determine which agencies are entitled to the grant funds or any specific part thereof but to collectively assert a paramount interest in the grant funds or property over any interest asserted by the trustee.

2. In addition to the Grantor Agencies who filed the instant joint motion to compel abandonment, additional sources for funds were the Will County Private Industry Council, the Region II Area Agency on Aging, the U.S. Department of Health and Human Services ("DHHS"), and the Illinois Department of Children and Family Services ("IDCFS"). IDCFS and DHHS have each filed a Statement of Non-Assertion of Claim to Title, Lien or Other Specific Interest in the grant funds or other property in the trustee's possession for the limited purpose of a determination by this court of the estate's interest in the grant funds or property.

3. As of March 16, 1985, the amount on deposit was approximately $27,000 in the first account and approximately $30,000 in the second account.

4. After an initial advance to meet one month's expenses, funds were disbursed under the grant agreements on a reimbursement basis upon the submission of expense vouchers. Additional funds were disbursed monthly to meet future cash needs of the grantee for the next 30 days. All the agreements expressly restricted the use of the grant funds by the grantee for specified grant purposes only.

5. These consist of an IBM photocopier, personal property bearing an identification label of Will County Private Industry Council, certain motor vehicles previously claimed by the Region II Area Agency on Aging, and certain auto parts being reclaimed by Collins Street Auto Parts Company of Joliet.

unexpended grant funds on deposit. DCCA further claims an equitable lien in the weatherization material.

## DISCUSSION

■ Section 541(a)(1) of the Bankruptcy Code provides that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). What constitutes a legal or equitable interest of the debtor is broadly construed. *See, e.g., United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983); *In re Wegner Farms Co.,* 49 B.R. 440 (Bankr.N.D.Iowa 1985). The underlying theory of section 541(a)(1) is to bring into the estate all interests of the debtor in property as of the date the case is commenced. 4 L. King, Collier on Bankruptcy ¶ 541.06 (15th ed. 1985). Nevertheless, to the extent a legal or equitable interest of the debtor in property is limited in the debtor's hands, it is equally limited in the hands of the trustee. Section 541(a) does not vest the trustee with any greater property rights than the debtor holds at the time the petition is filed. *In re Mortg. Funding, Inc.,* 48 B.R. 152, 154–55 (Bankr.D.Nev.1985). There exists in this regard a necessary reliance on non-bankruptcy law to determine the existence and nature of a debtor's interest in property. 4 L. King, Collier on Bankruptcy ¶ 541.06 (15th ed. 1985).

The Grantor Agencies concede that the grant funds and grant property constitute property of the estate but contend that the estate acquired a limited interest, one which was circumscribed by the grant agreements into which the debtor entered prepetition. Essentially, the Grantor Agencies maintain that the trustee has acquired debtor's mere possessory interest in the grant funds and grant property subject to the equitable rights of the Grantor Agencies since any application of the funds outside the narrow, specified purposes of

the grant would warrant reversion to the Grantor Agencies. Therefore, the Grantor Agencies contend that the trustee's intended uses of the grant funds and grant property exceed the interest of the debtor's estate.

In support of their position, the Grantor Agencies rely on *Palmiter v. Action, Inc.,* 548 F.Supp. 1166 (N.D.Ind.1982) *aff'd* 733 F.2d 1244 (7th Cir.1984), a case similarly involving a non-profit community service organization funded almost exclusively by federal and state grants. The court there found it necessary to determine the grantor's interest in grant funds in order to resolve whether or not such funds are immune from garnishment proceedings instituted by a judgment creditor of the grantee. The court in *Palmiter* ultimately held that the federal moneys held by such a grantee organization are not subject to garnishment proceedings until the funds are paid out for the purposes for which they were appropriated. The court's rationale was based on the fact that the pervasive federal supervision of expenditures of grant funds fulfilled a determinative criterion for creation of an equitable lien, a principle enunciated in *Henry v. First Nat. Bank of Clarksdale,* 424 F.Supp. 633, (N.D.Miss.1976), *aff'd* 595 F.2d 291 (5th Cir.1979). Therefore, the court found that the federal government retains an equitable, reversionary interest in federal grant moneys given to private, non-profit organizations *when such funds can no longer be used for authorized federal grant purposes.* 733 F.2d at 1250 (emphasis added).

■ The language utilized in *Palmiter* necessitates a bifurcated analysis of the debtor's interest in the grant funds and grant property since a distinction exists between the creation of an equitable lien and the existence of a reversionary interest, with different outcomes resulting therefrom.[6] An equitable lien is defined as

---

6. The *Palmiter* court stated in dicta that the equitable lien in the grant funds gives rise, in effect, to a trust relationship between the

government and the grantee agency. The Grantor Agencies rely on this statement for their contention that the debtor held the grant

"the right, not recognized at law, to have a fund or specific property, or its proceeds, applied to the payment of a debt," *In re Hart,* 50 B.R. 956, 959–60 (Bankr.D.Nev. 1985), and will arise where an intention to create an equitable lien clearly appears from the language and surrounding circumstances. *In re O.P.M. Leasing Services, Inc.,* 23 B.R. 104, 119 (Bankr.S.D.N.Y. 1982). In the present situation, the continuing interest and tight control that the Grantor Agencies retained in the grant funds meet the criteria for creation of an equitable lien. *See In re Madison County Econ. Opportunity Comm.,* 53 B.R. 541 (Bankr.S.D.Ill.1985). Moreover, the Grantor Agencies possess an equitable lien in any grant property to the extent that grant funds were used in the purchase thereof, *id.,* and to the extent the specific grant documents have not vested title in the grantee/debtor to carry out the provisions of the grant. Nevertheless, the court holds that any equitable lien in favor of the Grantor Agencies is subordinate to the rights of a trustee in bankruptcy under section 544(a).[7] *See In re O.P.M. Leasing Services, Inc.,* 23 B.R. 104, 119–20 (Bankr. S.D.N.Y.1982). *Accord, Cherno v. Dutch American Mercantile Corporation,* 353 F.2d 147 (2d Cir.1965); *Rosenbaum v. Century Indemnity Co.,* 168 F.2d 917 (2d Cir. 1948), *cert. den.* 335 U.S. 885, 69 S.Ct. 238, 93 L.Ed. 424 (1948). *See also In re Finkle,* 38 B.R. 101 (Bankr.D.Md.1984). In holding the rights of the trustee as a perfect lien creditor superior to any equitable lien of the Grantor Agencies, the court necessarily concludes that the funds, having become property of the bankruptcy estate, have been paid out for the purposes for which they were appropriated, thereby distinguishing the trustee in bankruptcy from an ordinary prepetition judgment creditor.

The Grantor Agencies do not squarely face this aspect of the holding in *Palmiter* but instead focus on the reversionary interest in the grant funds and grant property that the grant documents vest, under certain circumstances, in the Grantor Agencies. The Grantor Agencies maintain that the trustee holds this property of the estate subject to the Grantor Agencies' right of reversion which they now seek to assert. This reversionary interest is at the heart of the controversy between the trustee and the Grantor Agencies, the resolution of which requires the court to balance the conflicting aims and purposes of the Bankruptcy Code with those of the Grantor Agencies. *See In re DiPiazza,* 29 B.R. 916, 920 (Bankr.N.D.Ill.1983).

Section 541(a) of the Code was intended to be broad, precisely because one of the prime purposes of the Code, particularly in a Chapter 7 case, is the marshalling of the debtor's assets to satisfy the claims of creditors. The issue in this case therefore becomes whether the liquidation of nonprofit agencies funded by the federal or state government is within the purview of Chapter 7 of the Bankruptcy Code. Fundamentally, the Grantor Agencies are contending that the winding up of the affairs of this debtor is not to be administered

---

property in trust and therefore the estate's interest is a limited one. Although a fiduciary relationship clearly existed between the debtor and the Grantor Agencies, a fact which the court in *Palmiter* appears to have meant by its reference to a relationship of trust, this court concludes that the grant funds and grant property do not constitute property impressed with a trust held by the debtor for the benefit of either the Grantor Agencies or the beneficiaries of the grants. The grant documents herein endowed the debtor with the ability to use the funds as its own as an independent entity and make independent decisions with respect to expenditures so long as the funds were not spent improperly. There was no intent expressed by the parties to create a trust nor is the remedy of a constructive trust

warranted in a situation such as the one *sub judice.*

7. The trustee's powers under section 544(a) are those which state law would allow to a hypothetical creditor of the debtor who, as of the date of filing, had completed the legal or equitable processes for perfection of a lien upon the debtor's property available for satisfaction of such creditor's claim. 4 L. King Collier on Bankruptcy ¶ 544.02 (15th ed. 1985). Section 9–301 of the Illinois Commercial Code, Ill.Rev. Stat. ch. 26 ¶ 9–301, includes a trustee in bankruptcy within the definition and rights of a "lien creditor."

under the bankruptcy laws, a policy which Congress has in no way expressed.

■ A careful reading of both *Palmiter* and the grant documents themselves supports the conclusion of this court that the grant funds and grant property herein can be administered by the trustee in accordance with the Bankruptcy Code. Since it is possible in conjunction with this Chapter 7 proceeding to use the grant funds for grant purposes, that is, proper payment to those creditors who have provided prepetition services enabling the grantee to carry out the grant program, *to that extent* the grant funds and grant property are not subject to a reversionary interest in favor of the Grantor Agencies. *See Palmiter, supra,* 733 F.2d at 1250.

With respect to the grant funds, the documents themselves clearly authorize the grantee to incur proper costs against the grant. The documents further provide that upon termination of the grant the grantee shall be allowed full credit for the grantor's share of noncancellable obligations properly incurred pre-termination, and set forth that the grantee shall refund any balance of funds which were *unobligated* at the end of the grant period. (emphasis added) In particular, the grant agreement executed between the debtor and Action, Inc., which is representative of the purport of all the grant documents, provides in relevant part:

> Obligations are the amounts of orders placed, contracts and grants awarded, services received, and similar transactions during a given period that will require payment by the grantee during the same or *future* period. (emphasis added) Project costs are all necessary obligations incurred by a Grantee in accomplishing the objectives of a grant during a project period.

There have been no allegations that the costs which the trustee now seeks to pay pro-rata in an orderly Chapter 7 liquidation proceeding were improperly incurred, thereby triggering remittance of excess grant funds to the Grantor Agencies. Therefore, the court holds that utilization of the grant funds in this Chapter 7 case by the trustee, who stands in the shoes of the grantee and thereby continues to carry out the grant purposes by seeking to conclude debtor's obligations that arose in connection with the grant programs and were approved under the grant agreements, is within the scope of the grant agreements. The reversionary interest of the Grantor Agencies consequently fails to become viable except in the event there are any excess funds after "grant-purpose" creditors are paid.

■ The court concludes that the winding up of the affairs of the debtor herein is within the scope of those purposes for which grant funds were appropriated. The insolvency of the agency necessitated the filing of this Chapter 7 petition. Since it could not pay its providers in full, the debtor could not continue to operate. By discontinuing operations and filing this petition, the debtor undertook to pay its creditors pro-rata in sums less than the face amount of each claim. To compel the trustee to abandon all property of this estate would render the filing of the Chapter 7 petition a useless act. The Grantor Agencies have pointed out no orderly alternative method to satisfy bona fide claimants who provided services in furtherance of the grant objectives with a reasonable expectation of reimbursement therefor. Nor has Congress provided an alternative to the Bankruptcy Code for distributing the assets of a bankrupt federally-funded agency. The court notes the absence of a motion to dismiss this proceeding on the grounds that the debtor herein is ineligible or precluded from filing a case under Chapter 7 and in fact there does not appear to be any such statutory exception. *See* 11 U.S.C. § 109.[8] Had either Congress or the

---

**8.** Section 109(b) provides:

A person may be a debtor under Chapter 7 of this title only if such person is not—
  (1) a railroad;

  (2) a domestic insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, credit union, or indus-

Grantor Agencies intended that to be the case, they should have so provided.

With respect to the grant property, the grant agreements provide for the retention of title in the grantee to property purchased for program operation subject to the particular grantor agency's *discretionary* reservation of the right to transfer title back to the grantor or to a named third party. (emphasis added) To the extent this language creates an equitable lien in favor of the Grantor Agencies in the vehicles sold by the trustee or in the weatherization material, *see Madison County, supra,* it is avoidable by the trustee as discussed above. With respect to any retention of a reversionary interest, the failure of any grantor to assert its reserved rights prior to the time this petition was filed precludes such an assertion of title which has now vested in the trustee by the filing of this case. Such a discretionary reversionary interest is equivalent to no more than an avoidable equitable lien.[9] Had the Grantor Agencies in issue intended to retain title to all property purchased with grant funds as soon as it was acquired, they could have done so by means of a "title vesting" clause in the agreement. *See* e.g. *In re DeNalco Corporation,* 51 B.R. 77 (Bankr.N.D.Ill.1985). The trustee may therefore sell the grant property and utilize the proceeds to reimburse creditors of the estate.

As a final consideration, the trustee seeks to use a portion of the grant funds to pay attorneys' fees as a priority administrative expense under section 507(a)(1).[10] The court holds that such payment is a necessary component of the debtor's liquidation, which the court has already held is consistent with grant purposes, and will be allowed to the extent reasonable upon proper application.

IT IS THEREFORE ORDERED that the joint motion of State of Illinois, Department of Commerce and Community Affairs, the Illinois Department of Public Health, the Illinois State Board of Education, and Action, Inc. to compel the trustee to abandon property of the estate is hereby denied.

---

trial bank or similar institution which is an insured bank as defined in section 3(h) of the Federal Deposit Insurance Act (12 U.S.C. 1813(h); or

(3) a foreign insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, or credit union, engaged in such business in the United States.

9. The court notes that this is a different result than that with respect to the reversionary interest in the grant funds. Such difference stems from the discretionary nature of the reversionary interest retained by the Grantor Agencies in the grant property as compared to the unequivocal reversionary interest retained in the grant funds when such funds are not used for grant purposes.

10. Since the court has found that the Grantor Agencies do not have title to the grant property, the trustee is not entitled to section 506(c) fees.