**In the Matter of COMMUNITY ASSOCIATES, INC.,
Debtor.**

**STATE OF CONNECTICUT, DEPARTMENT OF TRANSPORTATION,
Plaintiff,**

v.

**Anthony S. NOVAK, Trustee,
Community Associates,
Inc., Defendants.**

**Bankruptcy No. 2–92–01094.
Adv. No. 2–92–2388.**

United States Bankruptcy Court,
D. Connecticut.

April 12, 1993.

Robert L. Marconi, Asst. Atty. Gen., Hartford, CT, for plaintiff.

Jack M. Bassett, Grafstein and Associates, Farmington, CT, for trustee.

## MEMORANDUM OF DECISION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

### ISSUE

The State of Connecticut Department of Transportation (DOT) seeks the return of three motor vehicles presently in the possession of Anthony S. Novak, Trustee of the Chapter 7 estate of Community Associates, Inc. (the debtor). The debtor, a private, nonprofit corporation had been in the business of operating counseling, training and other facilities in various locations throughout Connecticut. The DOT alleges that the vehicles purchased by the debtor with governmental grant funds provided by the DOT belong to the DOT and are not property of the bankruptcy estate. The trustee contends that the vehicles are property of the estate under Code § 541(a) [1] and any interest the DOT may have in the motor vehicles cannot prevail over the Code § 544 (strong-arm) powers of a bankruptcy trustee.[2] The parties, agreeing that there

---

**1.** Section 541(a) provides that a bankruptcy estate is comprised, *inter alia,* of "all legal or equitable interests of the debtor in property as of the commencement of the case."

**2.** Section 544 provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such creditor exists; or

are no genuine issues as to any material facts, have filed cross-motions for summary judgment.

## II.

## BACKGROUND

Pursuant to the Urban Mass Transportation Act of 1964, 49 U.S.C.App. § 1601 *et seq.* (UMTA), the United States Department of Transportation made cash grants to Connecticut to be distributed by the DOT to qualified, nonprofit organizations for the purchase and operation of specialized motor vehicles to transport elderly and disabled persons. The DOT entered into two separate, but similar, UMTA agreements with the debtor for the purchase and operation of such vehicles in the greater Waterbury, Connecticut area. In the first agreement dated December 1, 1988, the DOT made a cash grant to the debtor of $22,235 to purchase one vehicle. In the second agreement dated May 8, 1990, the DOT granted the debtor $50,000 for the purchase of two vehicles.

Section 5 of each agreement provided that the grant was the maximum DOT contribution to the debtor's program, with additional costs to be borne by the debtor. Section 6 stated: "Title to [the vehicles] shall be in the name of [the debtor] subject to the restrictions on use and disposition of the [vehicles] set forth herein. The [debtor] shall not transfer title of the [vehicles] to any third party." Section 7 required the debtor to use the vehicles only for program purposes. The debtor, at its expense, was to keep the vehicles in repair and maintain adequate liability and property damage insurance. Section 8 stated that the debtor "is not required to return to the State proceeds from the disposition of [the vehicles], regardless of the fair market value at the time the [vehicles are] sold; however, proceeds from the sale of said [vehicles] must remain in use for program purposes."

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists;

Section 16 authorized the DOT to terminate the agreement, without cause, on 60–day prior written notice, in which event the debtor agreed to return "ownership, title and possession" of the vehicles to the DOT, and if "this return cannot be made" by the debtor, the DOT had the discretion to assess the debtor "all or a proportionate share of the then current market value of the [vehicles]."

The debtor filed a chapter 11 petition on March 23, 1992. The court converted the case to one under chapter 7 on October 29, 1992, and the DOT filed its complaint for a turnover of the vehicles on December 9, 1992.

## III.

## DISCUSSION

The DOT relies on the holding in *In re Joliet–Will County Community Action Agency*, 847 F.2d 430 (7th Cir.1988) for its contention that it is entitled to the vehicles. In *Joliet–Will*, several federal and state agencies had made cash grants to a private, nonprofit community organization for foster grandparent, child care, family planning, insulation for homes of low-income people, legal assistance to the poor, and similar programs. After the organization filed a chapter 7 bankruptcy case, the agencies asserted ownership over all the assets of the organization, claiming the assets were "either federal or state grant money or personal property bought with such grant money and are therefore ... not available for distribution to the creditors." *Id.* at 431. The Seventh Circuit Court of Appeals (Posner, J.) stated the terms of the grant determined whether the organization's assets were property of the estate. If the organization were merely an agent of the agencies to disburse the grant monies, the cash and the personal property bought with it belonged to the agencies. If

(b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

the grants were payments under a contract, the agencies would have a contractual claim for return of the money, but not a property right in the funds or items purchased with such funds. *Id.* at 432. In holding that the debtor was akin to a trustee for the disbursement of the grant money, Judge Posner noted that the "grants impose minute controls on the use of the funds", with little discretion in the recipient, that "[e]ach grant contains a budget specifying the items for which costs chargeable to the grant may be incurred"; that "[t]he grantee may not switch unused funds", and that the government could order reconveyance of the property to it at any time. *Id.*

Judge Posner emphasized that the organization's unpaid creditors, whose expenses were authorized under the government grants, could make claims to the agencies for payment of their invoices out of the recovered grant monies. *Id.* at 434. He then proceeded to analyze, on a cost-benefit basis, the situation before the court:

> The argument is thus over distribution, rather than the total to be recovered by creditors. Creditors as a whole can do no better if the $97,000 worth of cash and personal property in Joliet–Will's hands is distributed by the trustee in bankruptcy instead, although particular creditors may do better. The bankruptcy does not enlarge the pool available to creditors, but actually shrinks it. The costs of bankruptcy administration, including the trustee's fee (more than 4 percent of the assets in this case—greater, of course, in some other cases, see 11 U.S.C. § 326(a)), will be deducted from the pool. No corresponding costs will be charged to creditors if the $97,000 is returned to the federal and state agencies to distribute to the creditors in accordance with the terms of the grants and with any procedure for allocating loss (in the event of a shortfall) that the

agencies may use, subject to judicial review.

*Id.*

The ruling described as a "clincher" that the bankruptcy trustee conceded she intended to distribute the assets of the organization in accordance with the terms of the grant, rather than the statutory "pro rata method of bankruptcy." *Id.* The court concluded that the granted funds and personal property bought with them were not assets of the bankruptcy estate.[3]

■ *Joliet–Will* does not control the present proceeding. The agreements in which the DOT granted cash in aid to the debtor, taken as a whole, do not make the debtor a mere trustee, custodian or other intermediary who lacked beneficial title to the assets purchased with the grants. As previously noted, the agreements required that title to the purchased vehicles be in the name of the debtor. The debtor had to use its own funds to maintain and insure the vehicles, and the debtor was permitted to transfer title under certain circumstances. More significantly, in terms of the *Joliet–Will* analysis, the DOT does not intend to share the value of the vehicles with any of the debtor's numerous creditors. In fact, the vehicles represent but a very minor part of the debtor's scheduled assets. The debtor's schedules disclose assets valued at $1,463,732.04 and liabilities amounting to $3,569,518. The issue in this proceeding is *not* an argument over who is to distribute the debtor's assets.

■ The issue, at heart, is whether the DOT should be allowed to assert the contractual restrictions on transfer and thereby remove property from the bankruptcy estate, when such restrictions are clearly rendered ineffective by the Bankruptcy Code. *See* § 541(c)(1). (An interest of the debtor in property becomes property of the estate notwithstanding any provision in an agreement that restricts or conditions

---

**3.** *Joliet–Will* has been followed where the property held by the nonprofit community service organization came from grants under the federal Head–Start program, 42 U.S.C. § 9831 *et seq.* The court ruled, "[A] Trustee's position as a hypothetical lien creditor under § 544 is is superseded by the federal government's rights under the Head–Start program, 45 C.F.R. 74.136". *United States v. Marchand (In re Southwest Citizens' Org. for Poverty Elimination)*, 91 B.R. 278, 287 (Bankr.D.N.J.1988).

transfer of such interest by the debtor). "In the interest of insuring that all interests of the debtor in property become property of the estate, section 541(c)(1) provides generally that restrictions on the transfer of the debtor's property will be inoperative to prevent inclusion of the property in the estate." 4 *Collier on Bankruptcy* ¶ 541.22 at 541–111 (15th Ed.1993). There were avenues open to the DOT, if it so desired, to use security agreements or leasing arrangements to protect its interests. The DOT has furnished no warranted basis for the court to disadvantage other creditors of the debtor and permit the DOT an immunity from the Code § 544 strong-arm powers Congress granted bankruptcy trustees.

### IV.

### CONCLUSION

The DOT's motion for summary judgment is denied. The trustee's like motion is granted, and a judgment will enter that the vehicles claimed by the DOT are property of the estate.