## In re ALPHA CENTER, INC., Debtor.

### Charles E. JONES, Trustee, Plaintiff, Counter–Defendant,

v.

### DELTA CENTER, INC., Defendant, Counter–Plaintiff.

Bankruptcy No. 92–41499.
Adv. No. 93–4063.

United States Bankruptcy Court, S.D. Illinois.

April 5, 1994.

Terry Sharp, Mt. Vernon, IL, for plaintiff, counter-defendant.

Ralph Stenger, Belleville, IL, for defendant, counter-plaintiff.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

Prior to its Chapter 7 bankruptcy filing, debtor Alpha Center, Inc. ("Alpha"), a not-for-profit corporation, provided mental health and counseling services to low income individuals in Pulaski and Alexander counties, Illinois. Alpha ceased operations in June 1992, and defendant Delta Center, Inc. ("Delta"), became the state-designated agency in place of Alpha to provide such services with state and federal grant moneys. Delta subsequently obtained possession of a 1990 Chevrolet Astro van that had been used by Alpha in providing grant services. In addition, Alpha transferred the sum of $11,927.06 to Delta.

Alpha filed for bankruptcy relief in November 1992, and the trustee brought the present action against Delta for turnover and to recover a fraudulent transfer, alleging that both the van and the money constitute property of the estate which were improperly transferred to Delta. In response, Delta contends that Alpha held this property only as an agent or intermediary for the disbursal of grant funds and that Alpha had no equitable interest in the van or the funds that would have become property of the estate. Delta asserts that its right to the van and the funds as successor agent for providing services to grant beneficiaries is superior to that of the trustee, requiring that judgment be entered in its favor.[1]

---

1. The Court took this case under advisement on the parties' briefs based upon their representation that the facts had been agreed upon. The facts are, therefore, undisputed except to the extent indicated.

## I.

Count I of the trustee's complaint seeks turnover of the Chevrolet Astro van currently in Delta's possession. The van, which is titled in the debtor's former name of Pulaski–Alexander Mental Health Association, Inc., was purchased in 1990 with "start-up" funds provided by the Illinois Department of Mental Health and Developmental Disabilities ("Department") for a grant program known as Community Integrated Living Arrangement ("CILA"). The CILA program was licensed and funded by the Department to provide group home housing where mentally impaired persons could receive services and regain the ability to live independently in the community. The debtor operated under the CILA program until April 1992, when the Department canceled its agreement with the debtor for failure to perform services.

Sometime after June 30, 1992, but before the debtor filed its bankruptcy petition in November, the Department took the van which had been purchased with CILA funds and reassigned it to Delta. The van has been inoperable in Delta's possession because the motor vehicle registration, which remained in the debtor's name until its expiration in March 1993, has not been renewed. Thus, in addition to defending the trustee's complaint for turnover, Delta has filed a counterclaim requesting that the trustee transfer title to the van so that it may be registered and licensed for use by Delta as a provider of state funded mental health services.

The trustee seeks turnover of the van pursuant to 11 U.S.C. § 542, which provides that an entity in possession, custody, or control of property of the estate shall deliver such property to the trustee. *See* 11 U.S.C. § 542(a).[2] "Property of the estate" is defined broadly under the Code and includes all legal and equitable interests of the debtor as of the commencement of the case. *See* 11 U.S.C. § 541(a). To the extent a property interest is limited in the debtor's hands, however, it is equally limited in the hands of the trustee, as the trustee acquires only the debtor's rights in property prepetition. *See In re Southwest Citizens' Org. for Poverty Elimination,* 91 B.R. 278, 286 (Bankr.D.N.J. 1988). Thus, property in which the debtor holds only legal title and not an equitable interest becomes property of the estate only to the extent of the debtor's legal title "but not to the extent of any equitable interest ... that the debtor does not hold." 11 U.S.C. § 541(d).

Delta contends that the debtor, as record owner of the van, had legal title only and that the Department was entitled, pursuant to the restrictions governing purchase of the van with grant funds, to recover the van once it could no longer be used for grant purposes. Since the trustee's rights are similarly limited, Delta asserts that the trustee's interest in the van is subordinate to the Department's right to reassign the van to Delta for use in providing grant services. The trustee counters that the Department's purported interest in the van is akin to an equitable or "secret" lien that may be avoided in bankruptcy. Therefore, the trustee asserts, the van constitutes property of the estate to be used or sold by the trustee for the benefit of creditors.

The trustee's right to turnover in this case depends on whether the van, as property purchased with grant funds, constitutes an asset of the debtor within the trustee's power or whether it belongs to the governmental entity that made the grant. In a similar case involving a debtor's interest in grant funds, *In re Joliet–Will County Community Action Agency,* 847 F.2d 430 (7th Cir.1988), the Seventh Circuit analyzed this question in light of the grant agreements there at issue, examining the extent of control retained by the granting entity and the debtor-grantee's role in carrying out the grant purposes. The court noted that the grants contained specific restrictions on the use of grant funds, leaving the recipient little discretion. Further, each grant contained a budget setting forth the amounts that could be spent on particular items. In addition, although the grant recip-

---

**2.** As plaintiff in this turnover action, the trustee has the initial burden of proving that the property sought is property of the estate. *See In re Williams,* 61 B.R. 567, 570 (Bankr.N.D.Tex. 1986).

ient had title to personal property bought with grant funds, it was required to reconvey such property to the government upon request. Under these circumstances, the court concluded, the grantee's ownership was "nominal, like a trustee's." *Id.* at 432. The grantee was "merely an agent for disbursal of funds belonging to another" so that the grant funds and property bought with them were not assets of its bankruptcy estate. *Id.*

In reaching this conclusion, the *Joliet–Will* court reasoned from its previous decision in *Palmiter v. Action, Inc.*, 733 F.2d 1244 (7th Cir.1984) and the Fifth Circuit case of *Henry v. First National Bank*, 595 F.2d 291 (5th Cir.1979), and found that the grant moneys remained property of the government until expended in accordance with the terms of the grants. *Joliet Will*, 847 F.2d 430–433. While the previous cases had characterized the government's interest as an "equitable lien," the court noted that this term was used in a special sense, "equivalent to beneficial ownership," and did not render the government's interest an unperfected security interest that could be set aside in bankruptcy. *Id.* Like *Joliet–Will*, both *Palmiter* and *Henry* involved federal grant programs that were governed by legislation and extensive regulations specifying the purposes for which the grant funds could be used. The *Henry* and *Palmiter* courts refused to allow garnishment of accounts containing grant funds, finding that the United States retained an equitable or "reversionary" interest in all grant funds and in property purchased with the funds that could no longer be used for the purposes of the grant. *See Palmiter*, 733 F.2d at 1249–50; *Henry*, 595 F.2d at 308–309.

Applying the test of *Joliet–Will* to the facts of the present case, the Court finds that the requirements of the CILA grant governing the debtor's purchase and use of the van in question rendered the debtor a mere agent, with the Department retaining a reversionary ownership interest. The debtor's receipt of grant funds here was governed by extensive legislation and Departmental rules, which delineated the purposes for which the

funds could be expended. *See* 210 ILCS 135/1 *et seq.;* 59 Ill.Adm.Code, Ch. 1, § 115 (1991). In addition, the debtor's CILA agreement was made subject to the Illinois Grant Funds Recovery Act ("Act") and the Department's Rule 103. Under the Act, the debtor was required to return grant funds that were not being spent for program purposes, and the Department had specific authority to recover funds that were "being improperly held" by a grantee. *See* 30 ILCS 705/4(d), 705/6. With regard to property purchased with grant funds, the Department's Rule 103 provided that the granting of funds for capital purchases was "dependent on ... such items [continuing] to be used for the original purpose of the grant...." 59 Ill.Adm.Code, Ch. 1, § 103.- 110(c)(5)(C) (1991). The debtor was required to make a written request for the purchase of a capital item, "itemizing the planned purchase and purpose," and to obtain approval from the Department that "[specified] conditions and stipulations for the use of grant funds in this manner." *Id.* § 103.110(c)(2)– (c)(4). Thus, while the debtor held title to the van purchased with CILA funds, it had very little discretion concerning its use of the grant funds, and the Department retained the right to recover the van once it could no longer be used for program purposes.

Because the Department's interest in the van under the "equitable lien" analysis of *Joliet–Will* is an ownership interest and not a traditional lien interest, it would not be subject to the trustee's power to avoid unperfected liens under § 544.[3] In a case with similar facts, *In re Southwest Citizens' Org. for Poverty Elimination*, 91 B.R. 278 (Bankr. D.N.J.1988), the court found that the trustee's rights in vehicles purchased with Head Start program funds were subordinate to the government's rights under the grant program where "the grant agreements provided that the grantee would retain title to property purchased with grant funds subject to the grantor agency's discretionary right to transfer title ... back to the grantor or to a third party." *Id.* at 286. The court rejected the trustee's argument that the government was

---

**3.** Section 544 gives the trustee the powers of a hypothetical lien creditor to avoid any unperfect-

ed security interests in the debtor's property. See 11 U.S.C. § 544.

required to obtain and file a security interest in the vehicles in order to prevail over the trustee's strong arm powers, ruling that the government had a reversionary ownership interest that superseded the trustee's position as hypothetical lien creditor. *Id.* at 287; *accord In re Madison County Economic Opportunity Comm'n,* 53 B.R. 541, 544 (Bankr. S.D.Ill.1985) (court ruled, based on *Henry,* that the government's continuing interest and tight control over grant funds gave it an equitable, reversionary interest that was not subject to avoidance by the trustee).[4]

Although not cited by the trustee, the case of *Matter of Community Associates, Inc.,* 153 B.R. 109 (Bankr.D.Conn.1993), provides perhaps the strongest authority for the trustee's position that the Department's interest in the van was subject to avoidance under § 544. The court there declined to follow *Joliet–Will,* finding that the government's restrictions on transfer were not sufficient to remove property from the debtor's estate. The court observed that "[t]here were avenues open to the [government as granting agency] to use security agreements or leasing arrangements to protect its interests [in vehicles purchased with grant funds]" and ruled, accordingly, that the government's interests were not immune from the § 544 strong arm powers of the trustee. *Id.* at 113.

*Community Associates,* however, is distinguishable from the present case on its facts. The grants there were provided by the United States Department of Transportation ("DOT") for the sole purpose of purchasing vehicles. The grants represented the DOT's maximum contribution to the debtor's counseling and training program, with additional costs to be borne by the debtor. The court found that the debtor was not "a mere ... intermediary who lacked beneficial title to the assets purchased with the grants" because the debtor, who held title to the vehicles, had to use its own funds to maintain and insure the vehicles and was "permitted to transfer title under certain circumstances." *Id.* at 112.

In this case, the Department's restrictions on the purchase and use of property within the CILA program rendered the debtor a mere agent or intermediary, with the Department retaining a beneficial ownership interest in the van purchased with CILA funds. The debtor held legal title only, subject to the Department's right to recover the van and reassign it to Delta as a provider of program services. The Department, therefore, properly transferred the van to Delta, and the trustee, who acquired only the debtor's interest in property, has no beneficial interest in the van that would support an action for turnover. The Court, accordingly, finds for Delta and against the trustee on Count I of the trustee's complaint. The Court further grants the relief sought by Delta in its counterclaim and directs the trustee to cause legal title to the van to be transferred to Delta.

## II.

■ Count II of the trustee's complaint seeks to avoid the debtor's transfer of $11,927.06 to Delta as a fraudulent transfer under 11 U.S.C. § 548. Delta asserts that this amount represents funds from two grants awarded to the debtor that remained unfulfilled when Alpha ceased operations in June 1992. These grants, known as the "Infants and Toddlers" and "0–3 Early Intervention" programs, were funded with state and federal "pass-through" money from the Illinois State Board of Education ("ISBE") and the Department and were designed to provide services to handicapped children. The contract period for both grants was from September 1991 through August 1992.

Alpha ceased operations on June 30, 1992, and Delta became the interim provider of services as of July 1, 1992, for the "Infants and Toddlers" and "0–3 Early Intervention" programs. During this interim, the debtor transferred to Delta the sum of $11,927.06, representing amounts that had been prepaid to Alpha under the grant contracts for the

---

4. While the court in *In re Caro Area Services for the Handicapped,* 53 B.R. 438 (Bankr.E.D.Mich. 1985), commented that the equitable lien analysis of *Madison County* would probably not be valid under the Code, *id.* at 441, n. 4, the court apparently failed to recognize that the "equitable lien" of *Henry* and *Madison County* amounted to an ownership, rather than a traditional lien, interest.

period after June 1992. The $11,927.06 amount consisted of $9,229.56 received from the ISBE and $2,697.50 from the Department. While the ISBE did not formally authorize the transfer of control and funding from Alpha to Delta, the transfer was made with the knowledge and implicit consent of the program staff. The Department, too, was aware of the transfer of program funds to Delta and acknowledged this transfer in a "facility data base transaction request" approved in August 1992 with an effective date of July 1, 1992.

The trustee seeks to avoid the debtor's transfer of $11,927.06 to Delta, asserting that these funds were property of the debtor that were transferred without consideration and while the debtor was insolvent. As with the van sought by the trustee in Count I, Delta maintains that the funds transferred did not constitute property of the debtor because they were held by the debtor as a trustee or agent for the disbursal of grant funds. Delta asserts that the debtor had merely a legal interest in the $11,927.06 of unobligated grant funds and that the ISBE and the Department retained an equitable ownership interest that allowed them to recover the funds once the debtor was no longer able to provide grant services and fulfill the purpose for which the grants were made.

 Under 11 U.S.C. § 548(a)(2)(A), the trustee may avoid any transfer of "an interest of the debtor in property" made within one year of the debtor's bankruptcy if the debtor received less than reasonably equivalent value in exchange for the transfer and was insolvent on the date of the transfer. The trustee has the burden of proving the threshold requirement that the property transferred was property of the debtor. However, when a transferee alleges that the transferred property was held in trust by the debtor, the transferee, as proponent of the trust, must identify the trust *res* and sufficiently trace any "trust" property that has been mingled with the general property of the debtor. *See* 4 *Collier of Bankruptcy*, ¶ 541.13, at 541–76 to 541–77 (15th ed. 1993). Money or funds paid from a commingled bank account are presumptively property of the debtor, and the transferee bears the burden of overcoming this presumption by tracing the money as trust assets. *See In re Sierra Steel, Inc.*, 96 B.R. 271, 274, n. 5 (9th Cir. BAP 1989); *In re Dobbs*, 115 B.R. 258, 271 (Bankr.D.Idaho 1990).

In this case, the trustee contends that Delta has failed to show that the moneys transferred to Delta were from segregated accounts of the debtor. Since the debtor had various sources of general funds, the trustee asserts that it was necessary to keep the "Infants and Toddlers" and "0–3 Early Intervention" funds in separate accounts to establish that the sums paid to Delta were impressed with a trust in favor of the ISBE and the Department as granting agencies. In response, Delta concedes that the payment of $11,927.06 to Delta was made from the debtor's operating fund checking account rather than from separate accounts. However, Delta argues that segregation of the grant funds in issue was satisfied by compliance with federal and state audit requirements, which do not require physical segregation.

Delta's position is borne out by the ISBE's "Supplemental Instructions and Procedures," which provide in pertinent part:

> Local ... agencies may not commingle Part H ["Infants and Toddlers"] funds with other federal, state or local funds. *This requirement is satisfied by the use of a separate accounting system that includes an "audit trail" of the expenditure of Part H funds. Separate bank accounts are not required;* the basic requirement is to maintain the fiscal identity of these funds.

(Emphasis added.)

The accounting system required by the ISBE to maintain the identity of the funds was specified in the "Supplemental Instructions and Procedures" and in "compliance instructions" included as part of the ISBE grant. Segregation of funds for the Department's "0–3 Early Intervention" grant was likewise satisfied by the accounting "audit trail" requirement, and no physical segregation or separate bank account was required. *See* Circular A–110 of the Office of Management and Budget, attached to Delta's Supplemental Response filed March 9, 1994.

In this case, the debtor's compliance with accounting procedures equivalent to segregated accounting maintained the identity of the grant funds and was sufficient to satisfy the tracing requirement for trust property. Although paid from the debtor's general account, the $9,229.56 amount and the $2,697.50 amount were sufficiently identified as ISBE and Department grant funds through the "audit trail" accounting system employed by the debtor. The Court finds, therefore, that Delta has sustained its burden and has overcome the presumption that these funds were part of the debtor's general funds.

The Court finds no merit in the trustee's further argument that the grant funds received by the debtor under the ISBE and Department programs constituted payments on a contract rather than property held by the debtor in trust under the *Joliet–Will* analysis. Both the "Infants and Toddlers" program and the "0–3 Early Intervention" program were governed by legislation and regulatory requirements specifying the purposes for which these grant funds could be spent, and the debtor's use of program money was restricted by detailed budgeting and audit requirements. The grant programs were, moreover, subject to the Illinois Grant Funds Recovery Act, which provided for the return of grant funds "not expended or legally obligated" by the end of the grant agreement or expiration of the grant period. *See* 30 ILCS 705/4(d), 705/5. While, in this case, the grant funds remaining at the end of the debtor's agreement were not returned to the granting agencies but were transferred directly to Delta as successor agency, this transfer was made with at least the implicit approval of the ISBE and the Department.

The Court finds, on these facts, that the debtor held the grant funds merely as a trustee or agent for the disbursal of grant funds, with the granting agencies retaining a beneficial ownership interest. Because the $11,927.06 in grant funds transferred to Delta did not constitute property of the debtor in which the trustee had an interest, the trustee may not recover these funds for the benefit of the estate. Accordingly, the Court finds for Delta and against the trustee on Count II of the trustee's complaint to recover a fraudulent transfer.

For the reasons stated, the Court finds in favor of the defendant, Delta, and against the trustee on Counts I and II of the trustee's complaint. The Court further finds in favor of Delta on its counterclaim to Count I of the complaint and directs the trustee to cause legal title to the van to be transferred to Delta.

SEE WRITTEN ORDER.