EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Laurentino Medina<br><br>Recurrido<br><br>v.<br><br>Del Valle Group, S.P. y otros<br><br>Recurridos<br><br>Estado Libre Asociado de Puerto Rico, Departamento de la Vivienda<br><br>Peticionarios | Certiorari<br><br>2019 TSPR 97<br><br>202 DPR \_\_\_\_ |

Número del Caso: CC-2019-5


Fecha: 21 de mayo de 2019


Tribunal de Apelaciones:

    Región Judicial de San Juan – Panel IX


Oficina del Procurador General:

    Lcdo. Isaías Sánchez Báez
    Procurador General

    Lcda. Rosa Elena Pérez Agosto
    Procuradora General Auxiliar


Abogado de la parte recurrida:

    Lcda. Sandra Santiago Rivera


Materia: Sentencia con Opinión disidente.



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Laurentino Medina<br><br>    Recurrido<br><br>      v.<br><br>Del Valle Group, S.P. y otros<br><br>    Recurridos<br><br>Estado Libre Asociado de Puerto Rico, Departamento de la Vivienda<br><br>    Peticionarios | CC-2019-0005 | |

SENTENCIA
(Regla 50)

En San Juan, Puerto Rico, a 21 de mayo de 2019.

En esta ocasión nos toca resolver si este caso está paralizado en virtud de lo dispuesto en la Sec. 301(a) del Título III del Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA), infra. Por los fundamentos que exponemos a continuación, concluimos que el caso contra el Estado está paralizado y que procede su archivo administrativo hasta que culmine el proceso de quiebra o se levante la paralización.

I

El 11 de abril de 2018 el Ing. Laurentino Medina h/n/c Taino Builders, LLC. (señor Medina) presentó una demanda contra Del Valle Group, S.P. (Del Valle), Travelers Casualty & Surety Company p/c/ del Comisionado

de Seguros de Puerto Rico y del Departamento de la Vivienda al amparo del Art. 1489 del Código Civil, 31 LPRA sec. 4130. Alegó que Del Valle suscribió un contrato con el Departamento de la Vivienda para la remodelación de la Égida Felipe Sánchez Osorio en Carolina y Del Valle lo subcontrató a él para que realizara las labores de remodelación en el referido proyecto. El señor Medina explicó que incluyó al Gobierno en la demanda, porque el Departamento de la Vivienda es el dueño de la obra. Además, los fondos que se utilizaron para el proyecto provinieron de fondos federales que están bajo custodia del Departamento de la Vivienda, en específico del Capital Fund Program del United States Housing and Urban Development (HUD).

Posteriormente, el 18 de julio de 2018, el Gobierno presentó una moción ante el Tribunal de Primera Instancia en la que solicitó la paralización de los procedimientos al amparo de la Sec. 301 de la Ley PROMESA, supra. Posteriormente, el foro primario emitió una resolución en la que proveyó no ha lugar a la solicitud de paralización, pues entendió que el Gobierno no probó que los fondos no provenían del gobierno federal. Insatisfecho, el Gobierno presentó ante el Tribunal de Apelaciones una petición de certiorari y planteó que el foro primario erró y abuso de su discreción al resolver que no operaba la paralización de los procedimientos. El foro apelativo intermedio emitió una sentencia que dejó sin efecto la resolución del Tribunal de Primera Instancia. En esencia, concluyó que

según surge del expediente, el foro primario no podía denegar la paralización del caso. Explicó que existen situaciones en las que el deudor es custodio de fondos y en esos casos la paralización va a depender de si el custodio de los fondos tiene o no interés patrimonial sobre estos. Ante esto, el foro apelativo intermedio devolvió el caso al foro primario para que este recibiera prueba sobre la naturaleza del interés del Departamento de la Vivienda en los fondos federales de HUD.

Inconforme, el Gobierno acudió ante este foro mediante una petición de certiorari. Planteó que el foro apelativo intermedio erró al negarse a paralizar la totalidad de los procedimientos y ordenar que el foro primario dilucide si el Departamento de la Vivienda tiene interés propietario en los fondos de HUD. Asimismo, alegó que el Tribunal de Apelaciones erró al no resolver que al amparo del Art. 1489 del Código Civil, supra, el Estado, como dueño de la obra, está expuesto a una reclamación monetaria, por lo que tal reclamación está paralizada. El 17 de abril de 2019 emitimos un Resolución en la que le concedimos al señor Medina 20 días para que mostrara causa por la que no debemos revocar al Tribunal de Apelaciones, devolver el caso al Tribunal de Primera Instancia y archivarlo administrativamente hasta que se levante la paralización.

II

La Sec. 301(a) del Título III de PROMESA, supra, incorpora las disposiciones de la Ley de Quiebras federal que paralizan automáticamente todos los pleitos que hayan comenzado o que hayan podido comenzar antes de la presentación de la petición de quiebra, como los casos que involucran reclamaciones monetarias. 11 USC secs. 362 y 922. En otras palabras, como nosotros mismos hemos mencionado, los tribunales quedan privados de jurisdicción automáticamente y no pueden continuar atendiendo los casos en donde haya una reclamación contra el deudor que radicó la petición de quiebra. Marrero Rosado v. Marrero Rosado, 178 DPR 476, 490-491 (2010). Es correcto que la Sec. 362(b) de la Ley de Quiebras federal, 11 USC sec. 362(b), menciona una serie de excepciones a la paralización automática. Sin embargo, este caso no cae en ninguna de ellas.

El Art. 1489 del Código Civil, supra, indica que "[l]os que ponen su trabajo y materiales en una obra ajustada alzadamente por el contratista no tienen acción contra el dueño de ella sino hasta la cantidad que éste adeude a aquél cuando se hace la reclamación". Como podemos ver, la reclamación que surge del mencionado artículo es una monetaria. Esta expone al gobierno a tener que pagarle una cantidad de dinero al señor Medina, de este prevalecer en el pleito. Si bien es cierto que el gobierno es custodio de unos fondos federales, no es necesario indagar el interés propietario del Estado en estos fondos, como concluyó el foro apelativo intermedio.

El Art. 1811 del Código Civil, 31 LPRA sec. 5171, establece que el deudor responde con todos sus bienes presentes y futuros cuando incumple con sus obligaciones. Conforme a lo anterior, el señor Medina, de prevalecer, tendría acceso a cobrar de todos los fondos que componen el patrimonio del Estado y no solamente de unos fondos federales en específico. De esta forma, no hay duda de que este caso trata de una reclamación monetaria, por lo que el caso está paralizado.

Por otro lado, contrario a lo que alegó el señor Medina en su escrito de cumplimiento con la orden de mostrar causa, este caso no cae bajo la Sec. 7 de la Ley Promesa, 48 USC sec. 2106. En específico esta sección indica:

> Except as otherwise provided in this chapter, nothing in this chapter shall be construed as impairing or in any manner relieving a territorial government, or any territorial instrumentality thereof, from compliance with Federal laws or requirements or territorial laws and requirements implementing a federally authorized or federally delegated program protecting the health, safety, and environment of persons in such territory. Íd.

Como mencionamos, en este caso lo que se está alegando no es otra cosa que una reclamación monetaria. No se trata de relevar al gobierno de cumplir con una ley federal, que es de lo que trata la Sec. 7 de la PROMESA. Véase Municipality of San Juan v. Puerto Rico, 919 F.3d 565, 581 (1er Cir. 2019). El hecho de que los fondos para

la remodelación provengan de fondos federales no quiere decir que hay un incumplimiento con ley federal.

### III

Conforme a lo anterior, expedimos el recurso de certiorari y revocamos la sentencia del Tribunal de Apelaciones. Devolvemos el caso al Tribunal de Primera Instancia de San Juan. Asimismo, ordenamos que el caso contra el Estado se archive administrativamente en ese tribunal por estar este paralizado en virtud de la Sec. 301(a) del Título III PROMESA, supra, hasta tanto se levante dicha paralización ya sea por la conclusión del procedimiento de quiebra o mediante una solicitud a esos efectos, según lo permite la Sec. 362(d) del Código de Quiebras Federal, 11 USCA sec. 362(d).

Lo acordó y lo ordena el Tribunal y lo certifica la Subsecretaria del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emitió una Opinión Disidente a la que se unieron la Juez Asociada señora Rodríguez Rodríguez, el Juez Asociado señor Estrella Martínez y el Juez Asociado señor Colón Pérez.

Sonnya Isabel Ramos Zeno
Subsecretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Laurentino Medina

    Recurrido

      v.

Del Valle Group, S.P. y otros          CC-2019-0005

    Peticionario

La Jueza Presidenta Oronoz Rodríguez emitió una Opinión disidente a la cual se unieron la Juez Asociada señora Rodríguez Rodríguez, el Juez Asociado señor Estrella Martínez y el Juez Asociado señor Colón Pérez

En San Juan, Puerto Rico, a 21 de mayo de 2019.

Nuevamente, una mayoría de este Tribunal aplica mecánicamente las disposiciones de la Sección 301(a) del Título III del *Puerto Rico Oversight, Management, and Economic Stability Act* (Ley PROMESA), en lugar de realizar un análisis detenido y profundo de los hechos particulares del caso y el derecho aplicable. En vez de ordenar el archivo administrativo del caso contra el Estado, procedía denegar el recurso de *certiorari* y permitir que el Tribunal de Primera Instancia celebre una vista a los fines de determinar si el Departamento de la Vivienda tiene un interés propietario o posesorio sobre los fondos que recibe del *Capital Fund Program del United States Housing*

*and Urban Development* (HUD). Por ello, disiento. Destaco que la celebración de dicha vista ante el Tribunal de Primera Instancia no obligaba a este Tribunal a disponer del recurso ante su consideración mediante un trámite apresurado, ya que podíamos emitir una orden para paralizar la vista y, entonces, atender el caso con la consideración que amerita.

I

No hay controversia sobre el mandato legislativo de la Ley PROMESA en torno a la paralización de reclamaciones monetarias en contra del Estado Libre Asociado de Puerto Rico (ELA). La sección 362 del Código de Quiebra Federal, 11 USC sec. 362, aplicable por virtud de esa ley, dispone que la paralización automática cubre reclamaciones en contra del deudor ("claim against the debtor") y del caudal de quiebra ("property of the estate"). Específicamente, prohíbe cualquier acto cuyo propósito sea obtener la posesión o el control de propiedad del caudal, 11 USC sec. 362 (3). Dicho lo anterior, la controversia en este caso es si existe una reclamación en contra de **propiedad del ELA**. Ello requiere evaluar si el Departamento de la Vivienda (Departamento) tiene un **interés propietario o posesorio** sobre los fondos que recibe del HUD.

Para determinar la naturaleza del interés, se debe analizar, entre otros asuntos, la relación entre la parte que otorga los fondos y la parte que los recibe:

> Items in the possession of the debtor may become property of the estate only to the extent of the debtor's property interest in those items. It is necessary to examine whether the debtor owns the property absolutely, conditionally, or merely through some lesser relationship such as a bailment, agency, or consignment, whereby the goods actually belong, save for the debtor's right to possession, completely to another. 5 Collier on Bankruptcy sec. 541.05.

La paralización en estos casos procede solo si se demuestra que el Departamento, más allá de ser un custodio de los fondos, tiene un interés **propietario o posesorio** sobre estos. Si, por el contrario, el Departamento no ostenta tal interés sobre los fondos que recibe del HUD, estos no forman parte del caudal de quiebra y, por tanto, no procede el archivo administrativo del caso al amparo de la Ley PROMESA.

Varios circuitos federales se han enfrentado a controversias similares y han adoptado una serie de criterios que deben considerarse para determinar el verdadero interés sobre los fondos, a saber: 1) si los acuerdos dan **gran poder regulatorio al ente federal** y poca discreción al deudor; 2) si el deudor ejerce un rol de **"agente"** respecto al uso de los fondos; y 3) el principio que los fondos **son propiedad del gobierno federal hasta que se utilicen de acuerdo con los términos acordados.** In re Joliet-Will County Community Action Agency, 847 F.2d 430 (7th Cir. 1988). El análisis también requiere evaluar si el deudor es "a trustee, custodian, or other intermediary, who lacks beneficial title and is merely **an agent for the**

**disbursal of funds belonging to another**". <u>In re: Joliet-Will County Community Action Agency</u>, <u>supra</u>, pág. 432 (énfasis suplido).[1]

                                II

Expuesto el derecho, solo resta su aplicación a los hechos del caso. Para ello, resulta necesario discutir los argumentos que esbozó el Sr. Laurentino Medina en su moción en cumplimiento de orden. Este arguye que el caso de referencia no se debe paralizar debido a que el Departamento actúa en calidad de "custodio-administrador" de los fondos federales que recibió para remodelar la Égida Felipe Sánchez Osorio en Carolina (Égida). Como custodio, su única responsabilidad es utilizar los fondos recibidos conforme las reglas y exigencias específicas del HUD. El

---

[1] Véase, por ejemplo, <u>In re LAN Tamers, Inc.</u>, 329 F.3d 204, 211-212, 215 (1st Cir. 2003) ("First, we look to the role that the debtor was intended to play." (…) "Second, we look to the degree and intensity of regulatory control over the property in question." (…) "Next, we focus on the extent to which recognizing a greater ownership interest-and thereby diverting the property in question to the creditors-would thwart the overall purpose of the regulatory scheme." (…) "LAN Tamers served only as a delivery vehicle for federally regulated reimbursements derived from the USF, not as an owner of those funds (or of the right to receive them). The reimbursements were never part of the bankruptcy estate, so creditors never had a claim to them."); <u>Westmoreland Human Opportunites, Inc. v. Walsh</u>, 246 F.3d 233, 246-247 (3rd Cir. 2001) ("a federal agency's retention of pervasive restrictions on a grantee's identity and manner of performance under a HUD-type grant program is inconsistent with the grantee's assertion of a property interest in the grant relationship." (…) "Considering all of the components of the Supportive Housing Program as a coherent whole, it is evident that HUD's strong federal interest in safeguarding the effective administration of Program funds, demonstrated by the rigorous controls imposed on the grant relationship by the Act and the Rule, suffices to exclude LSS's interest in the grant relationship from LSS's bankruptcy estate".); <u>In re Alpha Center, Inc.</u>, 165 B.R. 881, 884 (S.D. Ill., 1994) ("Applying the test of *Joliet-Will* to the facts of the present case, the Court finds that the requirements of the CILA grant governing the debtor's purchase and use of the van in question rendered the debtor a mere agent, with the Department retaining a reversionary ownership interest. The debtor's receipt of grant funds here was governed by

señor Medina distingue dicho rol de aquel del síndico o *trustee* que sí tiene poder discrecional en torno al uso de los fondos.

De otra parte, explica que los fondos del HUD provienen de cuentas federales conocidas como *Line of Credit Control System* y se depositan en los bancos de los *Public Housing Administration*. Para poder recibir los fondos, el Departamento debe cumplir con las exigencias del HUD, según se desglosan en el *General Conditions For Construction Contracts-Public Housing Programs*.[2] Además, debe cumplir con el esquema reglamentario del *Capital Fund Program*.[3] El uso de los fondos del *Capital Fund Program* está altamente regulado. Los fondos se deben utilizar en un periodo de 48 meses, a menos que el HUD apruebe una extensión del término. 24 CFR sec. 905.306 (f). Cualquier incumplimiento expone al Departamento a sanciones que incluyen la limitación, retención, reducción, devolución y denegación de la asistencia de fondos. 24 CFR sec. 905.804. Cualquier dinero que no se utilice se deberá devolver al HUD. 24 CFR sec. 905.322 (e). Estos son solo algunos ejemplos de los aspectos específicos que están reglamentados en el *Code of Federal Regulations*. Además de tales asuntos, también se exigen informes, planes de

---

extensive legislation and Departmental rules, which delineated the purposes for which the funds could be expended.").
[2] Se regulan aspectos de diseño, seguridad, materiales, contratación, empleo, pagos, modificaciones, entre muchos otros. El documento está disponible en el siguiente enlace: https://www.hud.gov/sites/dfiles/OCHCO/documents/5370.pdf (última visita 21 de mayo de 2019)

acción, récords y se reglamentan un sinnúmero de aspectos laborales, ambientales, procesales y económicos.

El señor Medina señala que, conforme In re: Joliet-Will County Community Action Agency, supra, el ELA -por virtud del Departamento- se debe considerar como un agente intermedio encargado de desembolsar un dinero que no le pertenece, pues es propiedad del *Capital Fund Program* del HUD.

En vista de estos planteamientos, existe una controversia genuina en cuanto a si el Departamento tiene un interés propietario o posesorio sobre los fondos. Particularmente debido a que se alega que este recibió una cantidad del HUD con el propósito específico de remodelar la Égida y que, para beneficiarse de esos fondos, tiene que cumplir con un sinnúmero de requisitos cuyo incumplimiento lo expone a sanciones que incluyen la devolución de los fondos.

De otra parte, vale aclarar que el señor Medina no exige que el Departamento le pague directamente lo que el contratista le debe. Tampoco exige que se utilicen fondos del Estado para atender su reclamación. Su petitorio se limita a que el Departamento consigne en el tribunal, de los fondos que recibió para el proyecto, la cantidad que le adeuda el contratista. En este caso no se solicita directamente al dueño de la obra que pague al

---

[3] 24 CFR Part 905, secciones 905.100 - 905.804.

subcontratista, sino que consigne la cantidad adeudada que, de todas formas, solo se puede utilizar para pagar los trabajos realizados para la remodelación de la Égida.[4]

Por tanto, estoy de acuerdo con la orden del Tribunal de Apelaciones a los fines de que sea el foro primario quien celebre una vista, escuche a ambas partes y, tras recibir la prueba pertinente, determine finalmente si existe o no dicho interés y, acorde con ello, si procede la paralización del caso contra el ELA al amparo de la Ley PROMESA. Esta controversia merecía una mayor consideración y no la aplicación mecánica de la paralización.

Por todo lo anterior, disiento.

Maite D. Oronoz Rodríguez<br>
Jueza Presidenta

---

[4] Según dispone el Artículo 1489 del Código Civil: "Los que ponen su trabajo y materiales en una obra ajustada alzadamente por el contratista no tienen acción contra el dueño de ella sino hasta la cantidad que éste adeude a aquél cuando se hace la reclamación." 31 LPRA sec. 4130.